**Mylo BRUNETTE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21416.**

United States Court of Appeals
Ninth Circuit.

May 17, 1967.

Rehearing Denied June 15, 1967.

Edith Anderson, Pocatello, Idaho, for appellant.

Sylvan A. Jeppesen, U. S. Atty., Jay F. Bates, Asst. U. S. Atty., Boise, Idaho, for appellee.

Before HAMLIN, MERRILL and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

A dent on the fender of a government automobile that cost only $32.50 to repair can't be much of a dent. Yet, a bump causing such a dent has been parlayed into a federal case in this court.

Mylo Brunette, appellant herein, an Indian residing in the Fort Hall Indian Reservation in Idaho, was driving his red pickup truck on a Reservation road when he was flagged down and stopped by two Indian police. One approached the truck stating that he had a warrant for appellant's arrest. After appellant asked who signed the warrant, it was shown to him signed by Judge Mary Matts. Whether appellant had an aversion to all lady judges or to this particular lady judge does not appear; in any event, he was not impressed. He stated that the warrant was no good and said, "I am not going with you. * * * Get that police car out of there or I'll ram it." Appellant's wife was seated in the truck with him. The policeman heard appellant say, "Give me the forty-five." With that, the appellant backed his truck up and went around the police vehicle. The police car, in a manner reminiscent of a Keystone comedy, followed appellant's truck with its red light flashing and the siren screaming. About a mile further down the road the police car managed to get in front of the

truck and partially block the road. Both cars stopped. One policeman went to the right side of the truck; the other approached the driver's side and advised appellant that he was under arrest. Apparently Judge Mary Matts' signature on the warrant still did not impress appellant, because he then stated to the police, "If you don't get out of the road I'll run you down." He again proceeded to drive around the police car and down the road.

Determining not to be thwarted, the police got back in their car and to the accompaniment of siren and flashing red lights continued the pursuit. Appellant's car was weaving from one side of the road to the other. He drove toward his home which was two or three miles away and, arriving there, turned suddenly into his driveway. The police car followed close behind, and as appellant neared his house, the police drove their car to the right side of the pickup to block a walkway into appellant's house. Both cars came to a stop, and, as the police car was stopping, appellant turned his pickup truck sharply to the right, striking the police car and causing the fender damage later estimated at $32.50.

The appellant was placed under arrest. Even though it might be understood that the police at this time were somewhat miffed at his conduct, it appears that underneath a gruff exterior kind hearts were beating. This was illustrated by the fact that they carried all the groceries that were in the back of the truck into appellant's house before they took him to the lockup. In an interview after his arrest appellant stated "his purpose in ramming the police car and resisting and threatening the officers was to get his case into the Federal Court. * * *"

As a result of all of these goings-on, the Federal Grand Jury was convened and after due deliberation returned an indictment charging that appellant "willfully and by means of a 1957 Chevrolet pickup truck, did injure property of the United States, that is, one 1963 Plymouth sedan * * * thereby causing damage to said government property of not more than $100.00", a violation of 18 U.S.C. § 1361. The appellant pleaded not guilty, and in due time a trial jury was impaneled to consider the serious issues involved.

At the trial, the version of the occurrences as told by appellant and his good wife seem to vary somewhat from that told by the Indian policemen. They recalled being stopped only once on the road instead of twice as told by the prosecution. When stopped, appellant admitted he stated that Mary Matts was "not a valid judge and I would not honor the warrant," but he denied the balance of the statements attributed to him. He admitted that he had said to his wife, "Hand me the forty-five" but claimed that he was referring to a can of beer that was rolling around the floor of the truck.[1] Appellant's story was that he told the officers he would return to Fort Hall after he went home to deliver his groceries. He said he proceeded to his home without knowing that behind him there was any siren-blowing or red-light-flashing police car; that he drove into the driveway in front of his house; and that he was completely stopped when the collision between his truck and the police car occurred. He claimed the police car ran into his truck. Unfortunately, for him and for us, he failed to convince the jury which found him guilty. The district judge placed him on one year's probation with the first month thereof to be spent in jail. Appellant timely appealed to this court.

Counsel for appellant has filed in this court a 23-page brief. In many particulars this brief does not comply with our Rule 18. The brief contains no specification of errors relied upon, nor does it contain any certificate by counsel that she has read the rules of this court and that the brief is in full compliance with those rules. An examination of this brief, however, discloses claims in connection with a wide variety of subjects. It charges, among the many claims, lack of jurisdiction, denial of due process, dis-

---

1. There is a brand called "Colt 45."

crimination against Indians, violation by the FBI of its authority, improper jury selection, insufficiency of the evidence upon which the indictment was based, excessive use of force by the police, violation of the Fort Bridger Treaty of July 3, 1868, with the Shoshonees and Bannocks, 15 Stat. 673–78 (1868), lack of proof of a corpus delicti, illegal arrest, and that the jury was "misled without instructions."

We have examined all of these claims, but find none of them meritorious. We shall not discuss them in detail, as we feel that more time has already been spent on the trial and appeal of this case than the occurrence justifies. It is time to put the case of the dented fender behind us.

Judgment affirmed.